STATE OF MINNESOTA, DEPART-
MENT OF HIGHWAYS, Plaintiff,

v.

The M/V SANTEE and Twin City
Barge and Towing Company,
Defendants.

No. 3–72–Civil–15.

United States District Court,
D. Minnesota, Third Division.

Feb. 7, 1973.

Warren Spannaus, Atty. Gen., Thomas G. Lockhart, Sp. Asst. Atty. Gen., St. Paul, Minn., for plaintiff.

Hagglund & Johnson, Dean K. Johnson, Minneapolis, Minn., for defendant.

## MEMORANDUM and ORDER

DEVITT, Chief Judge.

The issue in this admirality case is whether the M/V Santee or the Cedar Avenue Bridge, against which it collided on March 30, 1971, is at fault for the resulting damages.

The Cedar Avenue swing bridge, built in 1890–91, spans the Minnesota River in a north-south direction at approximately right angles to the river which flows in approximately a straight course west to east at that point.

The M/V Santee, pushing ahead of it in tandem a loaded grain barge and the M/V Sioux, was proceeding downriver from Port Cargill to St. Paul. Because of spring runoff, the river was about 10 feet above flat pool. The M/V Santee signaled the bridge tender to open the span. It was opened. The lead vessel, M/V Sioux, passed through the bridge opening. The barge scraped the center pier hard and the M/V Santee hit the upriver end of the opened swing span, causing $22,909.24 damage to the bridge and $14,449.03 damage to the M/V Santee.

Each claims negligence on the part of the other. Jurisdiction is established. 28 U.S.C. § 1333(1), 46 U.S.C. § 740.

■ In my view the M/V Santee was negligent, principally because of faulty seamanship by its captain.

The evidence is overwhelming that the M/V Santee approached the bridge, not from the right descending side of the river where the current runs but from either the center or left descending side, and that the tow was not kept in alignment on approach. All witnesses, including defendants' two experts, agreed that the proper and customary approach to the bridge was from the right descending bank. To approach otherwise would make safe passage very difficult because of strong right to left currents at that point occasioned in part by the outflow from Black Dog Lake, a flood plain spring-fed body of water immediately to the south.

Eyewitnesses testimony in support of this conclusion came from bridge tenders Edward Bodle and Owen Peterson and from bridge workers Robert Thielen, Harold Hensel, Bertrand Bjornstad and William Purintum, each of whom had an unobstructed view of the scene. The bridge workers were on a coffee break at the time and they and the bridge tenders observed the events.

I have no hesitation in concluding that the faulty seamanship of the pilot of the M/V Santee and other acts of negligence to be detailed in the Findings were direct causes of the collision.

The M/V Santee and its owner, Twin City Barge and Towing Company, claim the owner of the Bridge, State of Minnesota, was negligent because the bridge was a substantial obstruction to navigation and was not equipped with sheer-booms or fences. It is argued that had the bridge been so protected the accident would not have happened.

Construction of the bridge was authorized by an Act of Congress, April 28, 1890, ch. 169, 26 Stat. 74. The Act sets forth certain specifications as to location, dimensions and equipment. In Sec. 4 it is provided that the Secretary of War is to approve design drawings and location of the bridge.

■ The plaintiff was unable to prove that the design and location of the bridge had been submitted to, and approved by the Secretary of War, although all available records were diligently searched. This failure to show compliance with the terms of the Act of Congress properly may be viewed as a statutory fault and, under the rule of The Pennsylvania, 19 Wall. (86 U.S.) 125, 22 L.Ed. 148 (1873), places on the plaintiff the burden to show that such fault was not, or could not have been, a contributing factor in the collision.

■ It appears from the evidence that the bridge was built in all material respects in compliance with the Congressional act except for the failure to obtain prior approval of the plans from the Secretary of War. The issue then is whether plaintiff has shown that failure to obtain such approval was not, or could not have been, a contributing factor in the collision. In my view plaintiff has discharged this burden.

Although some of defendants' proof was directed to the alleged mislocation of the bridge and the claim that it was an unreasonable obstruction to navigation, their counsel conceded at oral argument the absence of substantial merit to these claims and said his principal con-

tention was that the absence of sheer-booms was the cause of the accident.

The Congressional act provided in Sec. 3 that the owner of the bridge was to "provide at its own expense such sheer-booms, guide piers, or other devices as may be at any time deemed necessary by the Secretary of War to facilitate the safe passage of boats or other water-craft through the spans of said bridge."

The proof clearly showed that at no time has the Secretary of War, or his successors in this responsibility, the Secretary of the Army and the U. S. Coast Guard, ever prescribed the erection of sheer-booms, guide piers or other such devices for the Cedar Avenue Bridge. It also showed that at no time has any complaint by navigation interests or others, been made as to the absence of such protective devices. No evidence was presented showing the happening of other accidents at the bridge indicative of the need for such devices.

Testimony of Franklin Ryder, a registered professional engineer and chief of the permits and statistics branch of the U. S. Corps of Engineers, was that the Cedar Avenue Bridge was known to the Corps of Engineers since its construction in 1890–91, and that the Corps had issued a permit in connection with power line construction on the bridge in 1968. He said neither the Corps of Engineers nor the U. S. Coast Guard had ever received any complaints about the bridge being a hazard to navigation or any requests for erection of sheer-booms or similar devices.

Mr. Ryder said that in recent years the Corps of Engineers has exercised its statutory authority to require sheer-booms and the reconstruction of bridges over the Mississippi River which were found to obstruct navigation. He said the Corps of Engineers and the U. S. Coast Guard had never directed the installation of sheer-fences or similar devices at the Cedar Avenue Bridge.

It appears that sheer-booms protect the Minneapolis, Northfield Railroad swing bridge approximately seven miles upstream from the Cedar Avenue Bridge, but it was not shown that installation was at the direction of the Secretary of the Army or the Coast Guard. It might reasonably be inferred that the Railroad installed the booms for the protection of its own bridge and property. Sheer-booms have not been installed on a road bridge carrying Highway 25 vehicle traffic over the Minnesota River approximately three miles upstream from the Railroad bridge. The evidence does not show that sheer-booms have been installed on any other road bridges crossing the Minnesota River.

There was no commercial water traffic on the Minnesota River (other than the movement of U. S. Troops from Fort Snelling to New Ulm at the time of the Sioux uprising) until the 1950's when a nine foot channel was dredged. Prior to that time the channel was too shallow for the movement of commercial barges. It is reasonable to conclude that sheer-booms were not required when the bridge was built in 1890–91 and, in the expert judgment of officials of the supervising government agencies, such have not been found necessary since that time. This is a judgment supported by evidence showing the absence of previous accidents and of complaints from representatives of navigation interests or others as to the need for sheer-booms.

But even if sheer-booms were present, it does not follow, and the evidence does not persuade, that booms would have prevented the collision.

I am satisfied that the plaintiff has discharged its burden of showing that its inability to prove submission of bridge plans to the Secretary of War for approval in 1890 was not, or could not have been, a contributing factor in the collision between the M/V Santee and the Cedar Avenue Bridge on March 30, 1971, and that the absence of sheer-booms was not a cause of the accident.

Plaintiff is entitled to damages in the sum of $22,909.24. Defendants' counterclaim is dismissed. These expressions shall constitute part of the Findings of Fact and Conclusions of Law. The Clerk shall enter judgment.